

# In the
# Missouri Court of Appeals
## Western District

IN RE: AREA 16 PUBLIC     )
DEFENDER OFFICE III     )
    )   **WD82962**
RUTH PETSCH,     )
    )   **OPINION FILED:  June 9, 2020**
          **Appellant,**     )
    )
**v.**     )
    )
**JACKSON COUNTY**     )
**PROSECUTING ATTORNEY'S**     )
**OFFICE,**     )
    )
          **Respondent.**     )

**Appeal from the Circuit Court of Jackson County, Missouri**
The Honorable David M. Byrn, Judge

Before Division One:  Lisa White Hardwick, Presiding Judge, Cynthia L. Martin, Judge
and Thomas N. Chapman, Judge

Ruth Petsch ("Petsch"), the District Defender of the Area 16 Public Defender Office,

and the Area 16 Public Defender Office (collectively "the District Defender") file an

application for review of the presiding judge's order denying the District Defender's request

for relief under section 600.063[1] for caseload issues concerning two public defenders. The District Defender argues that the trial court erred in concluding that the two public defenders specifically, and the other public defenders in the Area 16 Public Defender Office generally, were able to provide effective assistance of counsel and had no caseload issues warranting relief. The District Defender also asserts that the trial court committed error by failing to declare sections 600.062 and 600.063 subordinate to Rule 4 of the Rules of Professional Conduct because, without this conclusion, sections 600.062 and 600.063 are unconstitutional as applied. Finding no error, we affirm.

## Factual and Procedural Background

In late 2017, the District Defender filed a series of motions requesting a conference to discuss caseload issues with then-Presiding Judge of the Circuit Court of Jackson County, Missouri,[2] Judge John M. Torrence ("Judge Torrence"), pursuant to section 600.063.[3] The District Defender's third motion, filed December 15, 2017, requested a conference to discuss the caseload issues of two particular public defenders, Laura O'Sullivan ("O'Sullivan") and William Jobe ("Jobe"). Judge Torrence held a conference on January 10, 2018, in which the Jackson County Prosecuting Attorney's Office ("Prosecutor") participated. No record was made of the proceeding. Following the conference, Judge Torrence entered an order denying relief. The District Defender filed

---

[1]All statutory references are to RSMo 2016 unless otherwise indicated.

[2]The Circuit Court of Jackson County is in the 16th Judicial Circuit.

[3]Section 600.063.1 permits a district defender's office to file a motion to request a conference with a presiding judge to discuss caseload issues affecting individual public defenders. If the motion is compliant with the statute, the presiding judge is authorized to schedule a conference with the district defender and the affected prosecutor's office, and to either grant or deny the relief requested by the motion. If relief is granted, section 600.063.3 describes the relief that can be ordered by the presiding judge. The full text of section 600.063 is set forth, *infra*, in note 9.

an application for review to this Court as authorized by section 600.063.4. We reversed Judge Torrence's order and remanded the matter for further proceedings, due to the lack of a reviewable record. *Petsch v. Jackson Cty. Prosecuting Attorneys Office*, 553 S.W.3d 404 (Mo. App. W.D. 2018) ("*Petsch I*").

On July 19, 2018, the day after our mandate was issued in *Petsch I*, Judge Torrence emailed Joseph Megerman ("Megerman"), the deputy district defender of the Area 16 Public Defender Office,[4] and asked whether Megerman would be willing to meet with Judge Torrence and two other circuit court judges to discuss the remanded matter. Megerman responded on August 6, 2018, and declined Judge Torrence's invitation. The District Defender never followed up to schedule a conference to address the caseload issues of O'Sullivan and Jobe that were raised in the December 15, 2017 motion.

Instead, the District Defender filed an amended motion ("Amended Motion") on October 10, 2018, (nearly four months after the issuance of our mandate in *Petsch I*). The Amended Motion requested a conference to address the caseload issues of two different public defenders, specifically David Wiegert ("Wiegert") and Walter Stokely ("Stokely").[5] The District Defender and the Prosecutor mediated the issues raised in the Amended Motion in December 2018, but the mediation was unsuccessful.

---

[4]Judge Torrence reached out to Megerman because he believed that Petsch had taken a temporary leave of absence from her work.

[5]The Amended Motion indicated that the substitution of Wiegert and Stokely for O'Sullivan and Jobe was necessary because circumstances had changed since the filing of the December 15, 2017 motion so that O'Sullivan's and Jobe's caseloads were no longer exemplars of the individual public defenders in the Area 16 Public Defender Office.

3

On April 1, 2019, Presiding Judge, Judge David M. Byrn[6] ("Presiding Judge"), set the Amended Motion for a conference on May 30, 2019. The District Defender filed a second amended motion ("Second Amended Motion") on May 22, 2019, to provide updated information about Wiegert's and Stokely's respective caseloads. The Second Amended Motion asked the Presiding Judge: to hold a hearing on the record to address caseload concerns; to find that Wiegert and Stokely are unable to provide effective assistance of counsel due to their respective excessive caseloads, and that their excessive caseloads cannot be relieved by reassignment to other public defenders because they also have excessive caseloads; to create a waitlist for public defender services; and to appoint private counsel to represent eligible criminal defendants. The Second Amended Motion also asked the Presiding Judge to adopt the RubinBrown[7] standards for measuring public defender caseloads. While not specifically addressed in the Second Amended Motion's request for relief, the Second Amended Motion included allegations: (1) that sections

---

[6]Judge Bryn became Presiding Judge on January 1, 2019, when Judge Torrence's term as the presiding judge ended.

[7]The RubinBrown standards refer to the American Bar Association's study of public defender and attorney workload standards. *See The Missouri Project: A Study of the Missouri Public Defender System and Attorney Workload Standards*, AM. BAR ASS'N, https://www.americanbar.org/content/dam/aba/events/legal_aid_indigent_defendants/2014/ls_sclaid_5c_the_missouri_project_report.pdf (last visited May 15, 2020). RubinBrown LLP is the accounting and professional consulting firm that completed the study that resulted in workload standards for the Missouri State Public Defender System. RubinBrown LLP's time study resulted in workload standards that reflected the average amount of time an attorney could expect to spend on a particular type of case in order to provide reasonably competent assistance of counsel.

600.062[8] and 600.063[9] cannot be construed to be the exclusive remedy available to public

defenders with excessive caseloads because to so hold would conflict with the mandates of

---

[8]Section 600.062 provides:
Notwithstanding the provisions of sections 600.017 and 600.042 to the contrary, neither the director nor the commission shall have the authority to limit the availability of a district office or any division director, district defender, deputy district defender, or assistant public defender to accept cases based on a determination that the office has exceeded a caseload standard. The director, commission, any division director, district defender, deputy district defender, or assistant public defender may not refuse to provide representation required under this chapter without prior approval from a court of competent jurisdiction.
[9]Section 600.063 provides:
1. Upon approval by the director or the commission, any district defender may file a motion to request a conference to discuss caseload issues involving any individual public defender or defenders, but not the entire office, with the presiding judge of any circuit court served by the district office. The motion shall state the reasons why the individual public defender or public defenders will be unable to provide effective assistance of counsel due to caseload concerns. When a motion to request a conference has been filed, the clerk of the court shall immediately provide a copy of the motion to the prosecuting or circuit attorney who serves the circuit court.
2. If the presiding judge approves the motion, a date for the conference shall be set within thirty days of the filing of the motion. The court shall provide notice of the conference date and time to the district defender and the prosecuting or circuit attorney.
3. Within thirty days of the conference, the presiding judge shall issue an order either granting or denying relief. If relief is granted, it shall be based upon a finding that the individual public defender or defenders will be unable to provide effective assistance of counsel due to caseload issues. The judge may order one or more of the following types of relief in any appropriate combination:
(1) Appoint private counsel to represent any eligible defendant pursuant to the provisions of section 600.064;
(2) Investigate the financial status of any defendant determined to be eligible for public defender representation under section 600.086 and make findings regarding the eligibility of such defendants;
(3) Determine, with the express concurrence of the prosecuting or circuit attorney, whether any cases can be disposed of without the imposition of a jail or prison sentence and allow such cases to proceed without the provision of counsel to the defendant;
(4) Modify the conditions of release ordered in any case in which the defendant is being represented by a public defender, including, but not limited to, reducing the amount of any bond required for release;
(5) Place cases on a waiting list for defender services, taking into account the seriousness of the case, the incarceration status of the defendant, and such other special circumstances as may be brought to the attention of the court by the prosecuting or circuit attorney, the district defender, or other interested parties; and
(6) Grant continuances.
4. Upon receiving the order, the prosecuting or circuit attorney and the district defender shall have ten days to file an application for review to the appropriate appellate court. Such appeal shall be expedited by the court in every manner practicable.
5. Nothing in this section shall deny any party the right to seek any relief authorized by law nor shall any provisions of this section be construed as providing a basis for a claim for post-conviction relief by a defendant.
6. The commission and the Supreme Court may make such rules and regulations to implement this section. Any rule or portion of a rule, as that term is defined in section 536.010, that is created by the commission under the authority delegated in this section shall become effective only if it

5

the Rules of Professional Conduct set forth in Rule 4 and the constitutional due process and equal protection rights of criminal defendants; and (2) that sections 600.062 and 600.063, as presently construed, violate the separation of powers doctrine because the statutes interfere with the Supreme Court of Missouri's exclusive right to regulate attorney conduct.

On May 30, 2019, the Presiding Judge held a conference on the record to consider the caseload issues set forth in the Second Amended Motion. Pursuant to section 600.063, both the District Defender and the Prosecutor participated in the conference.

At the outset, the Presiding Judge told the parties that he would proceed with the matter as a conference, and not as a trial or administrative hearing. The Presiding Judge advised that as a result, all in attendance would have the opportunity to submit any information believed relevant to the decision he would be required to make pursuant to section 600.063, and that information could be presented through written materials or unsworn testimony[10] during which the District Defender, the Prosecutor, or the Presiding Judge could ask questions. Neither the District Defender nor the Prosecutor objected to the Presiding Judge's stated ground rules for conducting the conference. The District

---

complies with and is subject to all of the provisions of chapter 536 and, if applicable, section 536.028. This section and chapter 536 are nonseverable and if any of the powers vested with the general assembly pursuant to chapter 536 to review, to delay the effective date, or to disapprove and annul a rule are subsequently held unconstitutional, then the grant of rulemaking authority and any rule proposed or adopted after August 28, 2013, shall be invalid and void.

[10]The Presiding Judge indicated that the witnesses would not be sworn because the proceeding mandated by section 600.063 is a conference during which all participants share information and because every witness identified by the parties is an attorney, which means that they are officers of the court whose statements would presumably not change based on whether they were sworn or not.

Defender presented the unsworn testimony of nine witnesses, and the District Defender, the Prosecutor, and the Presiding Judge each submitted written materials.

The Presiding Judge issued a judgment/order on June 27, 2019, and a *nunc pro tunc* judgment/order correcting typographical and grammatical errors on June 28, 2019 ("Order").[11]  The Order concluded that the proceeding contemplated by section 600.063 is a conference, not a hearing.  The Order noted that the Second Amended Motion did not seek specific relief regarding the constitutionality of sections 600.062 and 600.063, but instead merely made allegations to the effect that the statutes were not constitutional as applied.  The Order held that even assuming the District Defender's allegations were sufficient to constitute a request for relief, sections 600.062 and 600.063 were not unconstitutional.

The Order noted that although a district defender's section 600.063 motion must be limited to requesting a determination that specifically named public defenders cannot provide effective assistance of counsel due to caseload issues, a presiding judge is nonetheless permitted to consider information about the workloads of all public defenders in the district defender's office, as that information is relevant to determining whether "the identified attorneys' cases cannot simply be reassigned" as a means of resolving alleged caseload issues.  *Petsch I*, 553 S.W.3d at 410 n.6.  Relying on data from the State of Missouri Public Defender Commission Fiscal Year 2018 Annual Report, the Order noted that the District Defender had seen a 63 percent reduction in the number of cases assigned

---

[11]We refer to the *nunc pro tunc* judgment/order as the "Order" consistent with the mandate in section 600.063.3 that the Presiding Judge "issue an order either granting or denying relief."  The Presiding Judge's use of "judgment" in the caption was likely an attempt to comply with Rule 74.01(a).

to it annually over the last ten years despite the District Defender maintaining essentially the same number of attorneys. The same report also indicated that the annual number of cases closed by the District Defender each year decreased by 58 percent from fiscal year 2004 to fiscal year 2018, and that in fiscal year 2018, each attorney in the Area 16 Public Defender Office was assigned, on average, 85.5 cases in fiscal year 2018, while the statewide average for the same time period was 198 cases. The Order then compared statistics from the Yearly Circuit Court Profiles compiled by the Office of State Court Administrators ("OSCA") for the 16th Judicial Circuit, served by the Area 16 Public Defender Office, and the 21st Judicial Circuit,[12] served by the Area 21 Public Defender Office. After examining the statistics, the Order found that "the District 21 Office is assigned and disposes of significantly more cases each year, doing so with approximately [one-half] of the number of public defenders when compared to the District 16 Office." The Order ultimately concluded that, based on the information and data presented at the conference, "it is *not* reasonable to conclude, under any standard or legal burden, that the District 16 office has caseload issues."

The Order further found that Wiegert and Stokely do not have caseload issues, and that Wiegert and Stokely are each able to provide effective assistance of counsel. The Order noted that, while Wiegert and Stokely asserted that they concluded they had caseload issues in early October 2017, each attorney also acknowledged that they did not receive nor were they assigned a large number of cases in October 2017. The Order found that

---

[12]The 21st Judicial Circuit is comprised of St. Louis County.

8

Wiegert's and Stokely's alleged caseload concerns were prompted by the Missouri Supreme Court's disciplinary action *In re Hinkebein*, No. SC96089 (Mo. banc Sept. 12, 2017). The Order concluded that the *Hinkebein* disciplinary action did not burden public defenders with additional requirements regarding their representation of defendants; instead, the case "simply pointed out that the Rules of Professional Conduct (Missouri Supreme Court Rule 4) apply to public defenders." The Order noted that the Area 16 Public Defender Office had operated for years under the requirements of Rule 4 while handling significantly more cases than the current caseload so that *Hinkebein* did not create a caseload issue.

The Order then considered Wiegert's and Stokely's respective caseloads. The Order noted that Wiegert's and Stokely's caseload complaints were based largely on their respective RubinBrown hours. The Order indicated that the Presiding Judge had reviewed the court's own records to determine that Wiegert had 97 cases assigned to him, but only 63 of those were active and only 34 of those were assigned to trial divisions. Stokely, on the other hand, had 78 cases assigned to him, but only 43 of those cases were active and only 25 of the active cases were assigned to trial divisions. The Order found that neither Wiegert's nor Stokely's caseloads were excessive or unmanageable. The Order then made observations about how Wiegert and Stokely could improve their efficiency, namely by using a different approach to review discovery with their clients who are in the Jackson County Detention Center and by using no-contact visits with those clients in the Jackson County Detention Center. The Order further observed, that because Stokely has many more RubinBrown hours than supervisors in the Area 16 Public Defender Office, one option for relief would be for the District Defender to assign more cases to supervisors.

9

The Order cautioned, however, that the Presiding Judge did not adopt RubinBrown as the "definitive standard regarding caseload issues," as "there are significant subjective factors and analyses that must be made and considered in determining caseload issues." The Order then noted that, even under the standards set by RubinBrown for yearly workload, 40 percent of the attorneys in the Area 16 Public Defender Office have caseloads that result in a yearly workload *under* the RubinBrown standard, so 40 percent of the office's attorneys could have additional cases assigned to them.

Other options the Order found available to the District Defender to relieve caseload burdens included reinstating the process of using docket attorneys for the preliminary handling and processing of cases before they are assigned to a trial division, reinstating the early disposition docket for those cases that could be resolved early, and discontinuing the blind application of the first felony policy in the face of a defendant wanting to plead guilty.[13]

Finally, the Order indicated that the District Defender was not entitled to the relief sought because the Presiding Judge had concluded that there are no caseload issues as to the Area 16 Public Defender Office generally, and had concluded that neither Wiegert nor Stokely have caseload issues preventing them from providing effective assistance of counsel. The Order then observed that the District Defender and the attorneys who work in the Area 16 Public Defender Office have unilaterally taken unwarranted actions since

---

[13]Testimony presented at the conference established that the District Defender's "first felony policy" requires that, before a client pleads guilty to his or her first felony, the attorney who represents the client to meet with Petsch or her deputy to discuss what work the attorney has done on the case prior to the client actually pleading guilty. Petsch testified that the purpose of the policy is to ensure that the attorney has done the "bare minimum to make sure the State can prove their case."

filing a series of motions in late 2017, including creating personal postponement lists, refusal or delays in interviewing and screening defendants when ordered by the court to do so, and refusal to enter appearances when ordered by the court to do so. The Order noted that these self-determined "remedies" were not authorized pursuant to sections 600.062 and 600.063. The Order reminded that all public defenders in the Area 16 Public Defender Office are licensed attorneys who are bound to follow Missouri statutes and court orders, particularly warning that "[t]he failure to follow and honor the rule of law, especially by those *within* the system, can only lead to disarray, chaos and disorder."

The District Defender timely appealed the Order. Additional facts are discussed in the analysis portion of this Opinion as necessary.

## Standard of Review

Section 600.063.4 permits an aggrieved party to "file an application for review to the appropriate appellate court" following the issuance of an order by a presiding judge granting or denying relief sought by a district defender. However, section 600.063 is silent on the subject of our standard of review on appeal. This is an issue of first impression.[14]

The parties do not agree on our standard of review. The District Defender states that our standard of review is competent and substantial evidence with respect to factual

---

[14]The subject was addressed in *In re: Missouri State Public Defender District 21, St. Louis County Trial Office*, 2018 WL 6787054, ED106576 (Mo. App. E.D. Dec. 26, 2018). However, our Eastern District transferred its opinion to the Missouri Supreme on its own motion, and thus effectively vacated its own opinion. Thereafter, the appeal was voluntarily dismissed while it was pending before the Missouri Supreme Court. *See* Case.Net entries in Case No. SC97612. Though we have read the Eastern District's thoughtful analysis on the subject of our standard of review, that analysis, though informative, has no precedential value.

In *Petsch I*, this court addressed section 600.063 in the context of whether the conference therein permitted had to be conducted on the record in order to permit meaningful appellate review. However, we did not address the standard of review to be applied on appeal.

11

findings, and *de novo* with respect to application of the law to the facts or to interpreting a statute. [Appellants' Brief, pp. 36, 52, 64] However, the District Defender's statement is not supported by any analysis or authority.

The Prosecutor acknowledges that section 600.063 is silent on the subject of our standard of review but argues that other language in the statute suggests an intent to treat an order issued by a presiding judge following a conference as a contested administrative hearing, requiring appellate review pursuant to section 536.140. [Respondent's Brief, pp. 22-24] That would require us to affirm if factual findings are supported by competent and substantial evidence on the record, with deference afforded to the presiding judge's credibility findings. The Prosecutor alternatively argues that we could justify applying the standard of review that is applicable to writs of certiorari following the grant of habeas corpus relief, in which case we would be required to defer to all factual findings by a presiding judge and to reverse only if the presiding judge exceeded his authority. Finally, the Prosecutor alternatively argues that we could justify applying the standard of review that is applicable to court-tried cases, in which case we would be required to sustain the decision of the presiding judge unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. [Respondent's Brief, pp. 23-24 n.9]

Neither party has correctly described our standard of review. As explained below, we conclude that section 600.063 describes a procedure for the exercise of a court's inherent authority and responsibility to manage dockets in a manner that respects the constitutional, statutory, and ethical rules and obligations of the parties, of counsel, and of the public. As

12

such, and consistent with appellate review of other trial court rulings involving the exercise of discretion pursuant to inherent authority, orders issued by a presiding judge following a section 600.063 conference are presumed to be correct, are reviewed for an abuse of discretion, and the burden of showing an abuse of discretion is on the appellant. *See, e.g.*, *Vonder Haar Concrete Co. v. Edwards-Parker, Inc.*, 561 S.W.2d 134, 138 (Mo. App. 1978). "If the ruling is clearly against the logic of the circumstances then before the [presiding judge] and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration, the [presiding judge] abused his discretion." *Id.* (citing *Shirrell v. Mo. Edison Co.*, 535 S.W.2d 446, 448 (Mo. banc 1976)).

***Courts have the inherent authority to manage dockets in a manner that respects the constitutional, statutory, and ethical rules and obligations of the parties, of counsel, and of the public***

Before section 600.063 was adopted in 2013, 18 C.S.R. 10-4.010 described a process that permitted the Missouri Public Defender Commission ("MPDC") to unilaterally decline appointments in criminal cases based on its own assessment of caseload concerns. 18 C.S.R. 10-4.010 was promulgated pursuant to authority extended to the MPDC by section 600.017(10), RSMo 2000.

The tension between the MPDC's declination of appointments because of self-assessed caseload concerns pursuant to 18 C.S.R. 10-4.010, and a trial court's statutory authority to appoint the MPDC to represent indigent criminal defendants, came to a head in *State ex rel. Public Defenders Commission v. Waters*, 370 S.W.3d 592 (Mo. banc 2012). In *Waters*, our Supreme Court concluded that in the absence of a challenge to either the lawful promulgation of 18 C.S.R. 10-4.010 or the validity of the MPDC's caseload

13

assessment thereunder, a trial court had no authority to ignore the MPDC's exercise of its authority under the rule. *Id.* at 597. Instead, in order to assure protection of an indigent criminal defendant's Sixth Amendment right to counsel, a trial court faced with the MPDC's declination of appointments because of self-assessed caseload concerns pursuant to 18 C.S.R. 10-4.010 would be required to employ alternative mechanisms for handling the issue of excessive appointments. *Id.* at 598.

The Supreme Court nonetheless recognized in *Waters* that courts "have inherent authority, and an inherent responsibility, to manage their dockets in a way that respects the rights of the defendant, the public and the State and that respects the obligation of public defenders to comply with the rules governing their representation." *Id.* at 598. *Waters* held that regardless the outcome should the validity or invalidity of 18 C.S.R. 10-4.010 be properly challenged in a later case, "the inherent authority of courts to manage their caseloads . . . will continue and should be utilized so as to best ensure that a defendant's constitutional rights, the defender's ethical duties and the State's right to prosecute wrongdoers are respected." *Id.* Specifically:

> [T]rial courts have both the authority and the responsibility to manage their dockets in a way that both moves their cases and respects the constitutional, statutory and ethical rights and obligations of the defendant, the prosecutor, the public defender and the public. In this regard, the trial judge has authority over the public defender's caseload that the public defender itself does not. For, unlike a public defender's office, a trial court has the authority to grant a motion filed by a public defender to be relieved, at least for some period of time, from being required to provide representation in less serious cases because the lack of resources will not allow the public defender simultaneously to provide competent representation in more serious cases.

*Id.* at 610-11. In short, *Waters* confirmed that courts have the inherent power to determine whether a particular public defender is unable to provide competent representation due to excessive caseloads. *Id.* at 611. But *Waters* also held that despite this inherent power, a court could not ignore action taken by the MPDC pursuant to 18 C.S.R. 10-4.010. *Id.* at 597.

Sections 600.062, effective July 2, 2013, and 600.063, effective August 28, 2013, were enacted in direct response to *Waters*. At approximately the same time, and as a part of what appears to have been a collaborative effort, the MPDC's authority pursuant to 18 C.S.R. 10-4.010 to self-assess caseloads to support declining appointments was repealed. In lieu thereof, section 600.062 declared that neither the MPDC nor its director have "the authority to limit the availability of a district office or any division director, district defender, deputy district defender, or assistant public defender to accept cases based on a determination that the office has exceeded a caseload standard." Section 600.063 describes the process a district defender can use to secure a determination that particular public defenders are unavailable to accept cases because of caseload issues. Specifically, section 600.063 describes a process for such decisions to be made. In pertinent part, section 600.063.1 provides first that "any district defender[15] may file a motion to request a conference to discuss caseload issues involving any individual public defender or defenders, but not the entire office, with the presiding judge of any circuit served by the district office." "The motion shall state the reasons why the individual public defender or

---

[15]The district defender must first have the approval of the director of the MPDC or the MPDC itself. Section 600.063.1.

15

public defenders will be unable to provide effective assistance of counsel due to caseload concerns." *Id.* "If the presiding judge approves the motion, a date for the conference shall be set within thirty days of the filing of the motion." Section 600.063.2. Then, "[w]ithin thirty days of the conference, the presiding judge shall issue an order either granting or denying relief." Section 600.063.3. The types of relief that can be ordered are thereafter described. *Id.*

Though section 600.063 addresses a presiding judge's power to consider a district defender's motion to determine whether a particular public defender is unable to provide effective assistance of counsel because of caseload concerns, the origin of this power remains "the inherent authority of courts to manage their caseloads . . . so as to best ensure that a defendant's constitutional rights, the defender's ethical duties and the State's right to prosecute wrongdoers are respected." *Waters*, 370 S.W.3d at 598. The inherent powers of a court "do not derive from statutory authority." *McPherson v. U.S. Physicians Mut. Risk Retention Grp.*, 99 S.W.3d 462, 476 (Mo. App. W.D. 2003) (citing *State ex rel. Cain v. Mitchell*, 543 S.W.2d 785, 786 (Mo. banc 1976)). Instead, the inherent powers of courts "confer judicial independence from executive or legislative control in four separate, but not mutually exclusive, areas: separation of powers, logistical support, court governance, and implementation of the adjudicative function." *Id.* (citing FELIX F. STUMPF, INHERENT POWERS OF THE COURTS: SWORD & SHIELD OF THE JUDICIARY 2 (1994)). Though a court's inherent powers exist independent of statutory authority, it is nonetheless accepted that courts will tolerate the statutory regulation of their inherent powers, so long as a statute constitutes a reasonable regulation that is not hostile to the essence of the inherent power.

16

*See State ex rel. Robinson v. Hartenbach*, 754 S.W.2d 568, 570-71 (Mo. banc 1988). In other words, section 600.063 did not create the power inherently possessed by courts to "grant a motion filed by a public defender to be relieved, at least for some period of time, from being required to provide representation," *Waters*, 370 S.W.3d at 611, but instead merely regulates the process for exercising that inherent authority when a district defender wants to secure a determination regarding caseload issues for particular public defenders.

Thus, notwithstanding the process described in section 600.063, the origin of a presiding judge's authority to grant or deny the relief requested in a district defender's section 600.063 motion remains the court's inherent authority. That is because:

> The primary duty of courts is the administration of justice. Attorneys are officers of the court. They are, in effect, a part of the judicial system of the state. Their duties, when honestly and ably performed, aid the courts in the administration of justice. Their educational and moral qualifications should be such as to insure the conscientious and efficient performance of such duties. The practice of law is so intimately connected with the exercise of judicial power in the administration of justice that the right to define and regulate such practice logically and naturally belongs to the judicial department.

*Clark v. Austin*, 101 S.W.2d 977, 981 (Mo. banc 1937).

> [I]t will scarcely be denied that a primary object essentially within the orbit of the judicial department is that courts properly function in the administration of justice, for which purpose they were created . . . . Since the object sought is not naturally within the orbit of the legislative department, the power to accomplish it is in its exercise judicial and not legislative, although in the harmonious co-ordination of powers necessary to effectuate the aim and end of government it may be regulated by statutes to aid in the accomplishment of the object but not to frustrate or destroy it.

*State ex rel. Clark v. Shain*, 122 S.W.2d 882, 884 (Mo. banc 1938).

17

***The exercise of a court's inherent authority is subject to review for abuse of discretion***

A trial court's exercise of inherent authority is subject to appellate review for an abuse of discretion. *See, e.g.*, *Shirrell*, 535 S.W.2d at 448-49 (addressing a trial court's "inherent authority, in the exercise of sound judicial discretion, to dismiss a case for failure to prosecute with due diligence," and noting that such action will not be disturbed on appeal unless that discretion was abused); *Francis v. Wieland*, 512 S.W.3d 71, 84-84 (Mo. App. W.D. 2017)) (addressing trial court's inherent power to impose sanctions, and that the exercise of the authority to do so is reviewed for an abuse of discretion); *Frantz v. Frantz*, 488 S.W.3d 167, 173-74 (Mo. App. E.D. 2016) (noting that trial court has the inherent authority to award attorney's fees and costs in contempt cases, and that exercise of that authority is reversed only when the trial court has abused its discretion). This standard of review applies even where a statute addresses a subject within the ambit of a court's inherent authority. *Vonder Haar Concrete Co.*, 561 S.W.2d at 137-38 (noting that trial court's inherent power to dismiss a case for failure to prosecute is also captured in a statute addressing dismissal of equitable mechanic's lien suits, and that the "statutory limitation applicable [to dismissal of equitable mechanic's lien suits for failure to prosecute] is not absolute and reserves some discretion in the trial court" such that the "court's action dismissing the case for failure to prosecute without unnecessary delay will not be disturbed on appeal unless the discretion of the trial court has been abused").

We can discern no basis to differentiate between a presiding judge's exercise of discretion in connection with inherent powers which are the subject of section 600.063, and a judge's exercise of discretion in connection with other inherent powers possessed by

18

the court. The same standard of review should be applied, and that standard of review is for abuse of discretion. *Robinson v. Langenbach*, No. SC97940, 2020 WL 2392488, at \*8 (Mo. banc May 12, 2020) ("Matters of discretion are reviewed for abuse of discretion."). We conclude, therefore, that a presiding judge's decision to grant or deny relief requested by a district defender pursuant to section 600.063 is subject to review for abuse of discretion. Judicial discretion is abused when a trial court's ruling "is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration." *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 87 (Mo. banc 2010) (quoting *Wingate by Carlisle v. Lester E. CoxMed. Ctr.,* 853 S.W.2d 912, 917 (Mo. banc 1993)). "It is . . . a principle deep within our law that on appeal from a trial court's discretionary ruling it is presumed that the ruling is correct, and that the burden of showing abuse of that discretion is on the appellant." *Shirrell*, 535 S.W.2d at 448-49.

In so concluding, we reject the standards of review suggested by the parties. Both the District Defender and the Prosecutor suggest that our review of the factual determinations should be for competent and substantial evidence, a standard of review applicable to contested administrative agency hearings conducted pursuant to sections 536.100 through 536.140. However, section 600.063 does not describe a contested administrative agency hearing process--nor could it. Section 536.010(4) describes a "contested case" as "a proceeding ***before an agency*** in which legal rights, duties or privileges of specific parties are required by law to be determined after ***hearing***." (Emphasis added.) Section 600.063 does not provide for a "hearing," and instead permits

19

(but does not require) a presiding judge to conduct a "conference" if the presiding judge concludes, in his or her discretion, that a motion filed by a district defender complies with section 600.063.1. Even more fundamentally, section 536.010(2) defines "agency" to mean "any administrative officer or body existing under the constitution or by law and authorized by law or the constitution to make rules or to adjudicate contested cases, *except those in the* legislative or *judicial branches*." (Emphasis added.) Though section 600.063.6 authorizes the promulgation of rules by the MPDC or our Supreme Court "to implement [section 600.063]" and requires rulemaking to comply with "the provisions of chapter 536," that directive does not convert the "process" otherwise described in section 600.063, such as it is, into action by an "administrative officer or body" pursuant to section 536.140. For the same reason, section 536.150, which describes the standard of review applicable to noncontested decisions by an administrative officer or body, is not applicable to section 600.063 conferences.

We also reject the Prosecutor's alternative suggestion that we should review a presiding judge's determination following a section 600.063 conference pursuant to *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976), as we would a trial court's judgment following a bench tried case.[16] Section 600.063 does not describe a civil action. It does not direct a hearing or trial. Section 600.063 does no more than permit a "conference," and even then, only if the presiding judge believes a conference is warranted given the assertions in a district defender's motion. Because the term "conference" is not defined in

---

[16]We reject without further discussion the Prosecutor's other alternatively argued standard of review employed for writs of certiorari following the grant of a motion for habeas corpus relief, as a section 600.063 motion and subsequent conference is plainly not a habeas corpus proceeding.

section 600.063, it is afforded its ordinary and customary meaning by reference to a standard dictionary. *Great S. Bank v. Dir. of Revenue*, 269 S.W.3d 22, 24-25 (Mo. banc 2008) ("When a statutory term is not defined, courts apply the ordinary meaning of the term as found in the dictionary."). The ordinary meaning of the term "conference" is "the act of consulting together . . . a meeting for consultation, discussion, or an interchange of opinions whether of individuals or groups." WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 475 (2002). The references to conference in section 600.063 are consistent with the ordinary dictionary definition of the term, as the "motion" authorized to be filed by a district defender in subsection 1 is limited to requesting a "conference to discuss caseload issues." A meeting to discuss caseload issues is not a bench trial. As such, the order authorized to be issued by a presiding judge after a section 600.063 conference is not a judgment disposing of a contested civil action.

Further supporting this conclusion is the fact that section 600.063 does not describe specific procedures applicable to the manner in which the conferences should be conducted, and describes no procedures that would be consistent with a trial. Rather, as noted, section 600.063.6 leaves the promulgation of rules addressing the section's implementation to the MPDC or the Supreme Court.

In summary, section 600.063 does not create authority in the courts that did not already exist as a part of a court's inherent powers. Section 600.063 describes the manner in which a district defender can secure a determination about the availability of particular public defenders to accept cases because of caseload issues. As such, section 600.063 regulates, in a limited and narrow context, the exercise of a court's inherent authority to

21

manage its dockets in a way that respects the rights of the defendant, the public, and the State, and that respects the obligation of public defenders to comply with the rules governing their representation. The conference permitted by section 600.063 is a mechanism to permit a presiding judge, a district defender, and a prosecutor to meet and to discuss information that could assist the presiding judge in deciding whether specifically identified public defenders are experiencing excessive caseloads that prevent them from providing effective assistance of counsel, and if so, in determining the relief appropriate to address the situation. We review these decisions for abuse of discretion.

Having resolved the standard of review to be applied to the Presiding Judge's Order, we turn to the District Defender's points on appeal.

**Analysis**

The District Defender raises three points on appeal. The District Defender's first point on appeal argues that the Presiding Judge ignored evidence, namely affidavits and testimony of Wiegert and Stokely, when determining that neither attorney had caseload issues preventing them from providing effective assistance of counsel. The District Defender's second point on appeal is similar, and argues that the Presiding Judge improperly considered efficiency factors in determining that the attorneys in the Area 16 Public Defender Office, including Wiegert and Stokely, could provide their clients effective assistance of counsel. The District Defender's third point on appeal challenges the constitutionality of section 600.063. We begin our discussion with the third point on appeal.

22

*Point Three: Constitutionality Challenge*

The District Defender's third point on appeal argues that the Presiding Judge erred in refusing to declare the provisions of section 600.063[17] subordinate to the Rules of Professional Conduct set forth in Rule 4 and "unconstitutional as applied if it is interpreted to limit the ability of public defenders to decline or delay appointments [in order] to comply with the rules of professional conduct." [Appellants' Brief, p. 63] In the argument portion of the brief, the District Defender asserts that the Second Amended Motion sought a declaration "that to the extent that [sections 600.062 and 600.063] are construed to limit the ability of public defenders to decline appointments because of excessive caseloads[, those statutes] would conflict with the Rules of . . . Professional Conduct, which would constitute an attempt to modify or annul Rule 4 in contravention of the separation of powers doctrine and Article V, section 5 of the Missouri Constitution." [Appellants' Brief, p. 64] The District Defender claims that, because attorneys in private practice are afforded the ability to decline representation when, in their professional judgment, they believe they would be unable to provide effective assistance of counsel to existing clients, such an interpretation would also violate the due process and equal protection rights of public defenders.

---

[17]The argument following Point Three also refers to section 600.062, and argues that it "should not be construed to override Rule 4 to prevent [the] District Defender and the public defenders of District 16 from declining appointments pursuant to their ethical duties under Rule 4." [Appellants' Brief, 67] Point Three does not expressly refer to section 600.062, however, leaving that argument unpreserved for appellate review. *Spencer v. Lombardi*, 500 S.W.3d 885, 889 (Mo. App. W.D. 2016) (holding that "an appellant's argument is limited to only those errors asserted in the points relied on" (quotation omitted)). However, because we are required to address whether the challenge raised in Point Three to the constitutionality of section 600.063 is subject to the exclusive jurisdiction of the Missouri Supreme Court, we elect to address that same issue with respect to the challenge to the constitutionality of section 600.062 raised in the argument portion of the brief.

23

Ordinarily, challenges to the constitutional validity of a statute are relegated to the exclusive jurisdiction of the Missouri Supreme Court pursuant to Article V, section 3 of the Missouri Constitution. However, the Supreme Court's "exclusive appellate jurisdiction is not invoked simply because a case involves a constitutional issue." *McNeal v. McNeal-Sydnor*, 472 S.W.3d 194, 195 (Mo. banc 2015). Instead, the Supreme Court's "exclusive appellate jurisdiction is invoked when a party asserts that a state statute directly violates the constitution either facially or as applied." *Id.* Even then, "[t]he constitutional issue must be real and substantial, not merely colorable." *Id.*

The District Defender has not raised a real and substantial constitutional challenge to the validity of sections 600.062 and 600.063 as applied. The District Defender initiated the procedure described in section 600.063 by filing the Second Amended Motion following the issuance of our mandate in *Petsch I*. Section 600.063.1 describes a mechanism for district defenders to "file a motion [with a presiding judge] to request a conference to discuss caseload issues involving any individual public defender or defenders, but not the entire office, with the presiding judge of any circuit court served by the district office." The permitted scope of the motion is limited to stating "the reasons why the individual public defender or public defenders will be unable to provide effective assistance of counsel due to caseload concerns." *Id.* A presiding judge is then permitted, but not required, to schedule a conference with the district defender and affected prosecutor to discuss the motion. Section 600.063.2. Then, the presiding judge is directed by section 600.063.3 to issue an order "either granting or denying relief," and "[i]f relief is granted, it shall be based upon a finding that the individual public defender or defenders will be unable

24

to provide effective assistance of counsel due to caseload issues." Section 600.063.3. The statute limits the relief that can be granted to any combination of enumerated remedies. Section 600.063.3(1)-(6).

Section 600.063 does not describe a trial or hearing process, and does not authorize the presentation of any issues or controversies for determination through the unique conference process therein described beyond the limited issue of whether an "individual public defender or defenders will be unable to provide effective assistance of counsel due to caseload issues." Section 600.063.3. A district defender cannot ask a presiding judge for a declaratory judgment about the constitutional validity of a statute on its face or as applied as a part of a section 600.063 motion.[18] Instead, section 600.063.5 provides that "[n]othing in this section shall deny any party the right to seek any relief authorized by law," signaling that other rights or remedies, if any, available to a participant in the section 600.063 conference procedure are not foreclosed by that procedure.

The District Defender remains free to challenge the constitutionality of sections 600.062 and 600.063 in any other proceeding where those issues can be properly raised. But the constitutionality of sections 600.062 and 600.063 cannot be raised in a section 600.063 motion, nor determined by a presiding judge following a section 600.063 conference. Because the constitutionality of sections 600.062 and 600.063 as applied were not proper subjects to be determined by the Presiding Judge following the section 600.063

---

[18]The Order noted that, while the body of the Second Amended Motion asserted that sections 600.062 and 600.063 are unconstitutional, the prayer for relief in the Second Amended Motion did not seek a declaration from the Presiding Judge regarding the constitutionality of the statute. We suspect that may be because the District Defender recognized that such a declaration is not authorized by Section 600.063.

25

conference conducted on the Second Amended Motion, the District Defender's assertion of error in the third point on appeal does not raise a real and substantial constitutional claim.[19] We are therefore free to determine the claim.

Point Three is denied.

***Points One and Two: Finding that Neither Wiegert nor Stokely Have Caseload Issues and that Both Wiegert and Stokely Are Able to Provide Effective Assistance of Counsel***

The District Defender's first and second points on appeal, while framed differently, assert the same error: the evidence presented during the conference does not support the Order's rejection of the Second Amended Motion's assertion that Wiegert and Stokely each have caseloads so high that neither attorney is able to provide effective assistance of counsel. In Point One, the District Defender asserts that the Presiding Judge failed to give sufficient weight to Wiegert's and Stokely's affidavits and testimony as to whether each is able to provide effective assistance of counsel to their clients. Point Two takes the opposite approach, arguing that the Presiding Judge relied too heavily on evidence that undermines the Second Amended Motion, in particular, options to produce greater efficiency in the Area 16 Public Defender Office generally, and to make Wiegert and Stokely more efficient lawyers specifically.

Section 600.063 tasks presiding judges of the circuit courts with entertaining motions requesting conferences to discuss caseload issues involving individual public defenders. When the General Assembly enacted section 600.063 in 2013, it provided that relief would only be appropriate if the a presiding judge found that an "individual public

---

[19]The Presiding Judge's cursory declaration in the Order to the effect that sections 600.062 and 600.063 are constitutional is, therefore, gratuitous, and of no force or effect.

26

defender or public defenders will be unable to provide effective assistance of counsel due to caseload issues." Section 600.063.3. "The [General Assembly's] careful selection of words is presumed meaningful." *Brentwood Glass Co. v. Pal's Glass Serv., Inc.*, 499 S.W.3d 296, 304 (Mo. banc 2016). Section 600.063.3 thus limits the issue before the Presiding Judge during the conference to whether the evidence established that Wiegert and Stokely could not provide effective assistance of counsel to their clients due to their respective caseloads.

Effective assistance of counsel is, of course, a reference to the minimum standard of representation guaranteed by the Sixth Amendment. *Suppes v. Curators of Univ. of Mo.*, 529 S.W.3d 825, 828 (Mo. App. W.D. 2017) ("The [General Assembly] is presumed to know the existing law when enacting new legislation."); s*ee Strickland v. Washington*, 466 U.S. 668, 686 (1984) ("[T]he Court has recognized that 'the right to counsel is the right to the effective assistance of counsel.'" (quoting *McMann v. Richardson*, 397 U.S. 759, 771 n.14 (1970))). The standard of effective assistance of counsel "does not guarantee perfect representation, only a 'reasonably competent attorney.'" *Harrington v. Richter*, 562 U.S. 86, 110 (2011) (quoting *Strickland*, 466 U.S. at 687). Thus, section 600.063.3 does not require an examination of whether Wiegert's and Stokely's caseloads are ideal or whether, if their respective caseloads were smaller, Wiegert and Stokely could provide better representation of their clients.

Nonetheless, the District Defender seems to argue as much, focusing Point Two on defending the procedures the District Defender has elected to implement in the Area 16 Public Defender Office and rejecting the procedures that, according to the Order, would

produce greater efficiency in the office in general, and for Wiegert and Stokely specifically. The District Defender asserts that the Presiding Judge should have instead relied on the testimony of various current and former public defenders as a basis to reject those efficiency measures as incompatible with the provision of effective assistance of counsel, and instead "give due consideration to the professional judgment of the public defenders who report they cannot take on additional work." [Appellants' Brief, p. 51]

What this argument overlooks, however, is that key to the analysis of Wiegert's and Stokely's ability to provide effective assistance of counsel to their clients due to their respective caseloads was an examination of the workloads of other attorneys in the Area 16 Public Defender Office and an examination of the office procedure implemented by the District Defender to determine why the District Defender could not relieve Wiegert's and Stokely's respective caseloads. *See Petsch I*, 553 S.W.3d at 410 n.6 (finding it "entirely appropriate" that the District Defender discussed the workloads of other attorneys in the office to address why the workloads of the attorneys identified in the motion for a conference simply could not be reassigned to other attorneys in the Area 16 Public Defender Office). Thus, it was entirely appropriate for the Presiding Judge to undertake an examination of the procedures in the Area 16 Public Defender Office. As evidenced by the Order, the Presiding Judge did so before considering Wiegert's and Stokely's respective caseloads.

There was testimony presented during the conference that established the District Defender's elimination of certain procedures--including the discontinuation of docket counsel for the preliminary handling and processing of criminal cases and the elimination

28

of the early disposition docket to identify cases that could be resolved early in the criminal process--and implementation of other procedures--including the refusal to have non-contact visits with clients in the Jackson County Detention Center, the refusal to give confidential, privileged copies of discovery to management at the Jackson County Detention Center with the instruction that the discovery be given to the client for review in the library, and the implementation of the first felony policy--resulted in less efficiency for the attorneys working in the Area 16 Public Defender Office. Point Two does not dispute that efficiency would result through the implementation of these procedures. Instead, Point Two asserts that it was inappropriate for the Order to consider how the Area 16 Public Defender Office and its attorneys, including Wiegert and Stokely, could be more efficient because that efficiency would come at the price of the quality of representation.

While the District Defender would clearly prefer to maintain its current practices and procedures while receiving relief from the Presiding Judge as outlined in section 600.063.3, the continuation of those practices and procedures is only necessary if they are encompassed within the concept of effective assistance of counsel. Otherwise, the policies and procedures impeding efficiency could be modified or eliminated in order to relieve the caseloads of the attorneys claiming they are unable to provide effective assistance of counsel due to their caseloads. The District Defender asserts that those practices and procedures that have been implemented in the Area 16 Public Defender Office are necessary for effective assistance of counsel because they allow for earlier examination of evidence by counsel and improve the attorney-client relationship. While those may be worthy goals for the Area 16 Public Defender Office, section 600.063.3 speaks only in

29

terms of "effective assistance of counsel due to caseload issues." The Supreme Court of the United States has clearly mandated that, for representation to be effective, it need not be perfect, and has recognized that effective representation of counsel may have been provided even if there is not a "meaningful relationship" between a criminal defendant and his or her attorney. *Harrington*, 562 U.S. at 110; *Morris v. Slappy*, 461 U.S. 1, 13-14 (1983). Accordingly, we do not find the Presiding Judge's consideration of the efficiency of the Area 16 Public Defender Office and its attorneys, including Wiegert and Stokely, to be an abuse of discretion. Point Two is denied.

Point One is broader, faulting the Presiding Judge's reliance on historical caseload statistics to determine that the Area 16 Public Defender Office generally and Wiegert and Stokely specifically did not have caseload issues. During the conference, the District Defender submitted unsworn testimony from nine witnesses, and the District Defender, the Prosecutor, and the Presiding Judge each submitted exhibits. In addition to affidavits and testimony by Wiegert and Stokely, testimony from other current and former public defenders, and testimony from the project director of the RubinBrown study,[20] and testimony from a professor who studies ethical issues facing lawyers in the criminal justice system, the Presiding Judge also had before him several exhibits. Among those exhibits were annual reports of the Missouri State Public Defender Office dating back to 2010, a

---

[20]In its argument supporting Point One, the District Defender asserts that, even though the Presiding Judge rejected the invitation to adopt the RubinBrown standards as the measure for whether caseloads are excessive, the Presiding Judge used the RubinBrown standards in the Order, albeit incorrectly, to determine that some attorneys in the Area 16 Public Defender Office had caseloads that were less than the RubinBrown standards. This argument is not encompassed within Point One, which speaks in terms of the Presiding Judge's reliance on historical caseload statistics rather than the affidavits and testimony of Wiegert and Stokely. As such, we will not entertain it, as "an appellant's argument is limited to only those errors asserted in the points relied on." *Spencer*, 500 S.W.3d at 889 (quotation omitted).

fifteen-year comparison of the public defender trial division caseload by county, a ten-year progression of cases assigned to the Area 16 Public Defender Office, and a comparison between the caseloads of attorneys in the Area 16 Public Defender Office and the Area 21 Public Defender Office. Those exhibits informed the Order's decision that "it is not reasonable to conclude, under any standard or legal burden, that the District 16 office has caseload issues and it is not reasonable to conclude that the attorneys in the office, specifically Mr. Wiegert and Mr. Stokely, have caseload issues."

The District Defender does not argue that the caseload statistics are incorrect, though. The District Defender argues that reliance on the caseload statistics was not appropriate because: (1) the statewide statistics of average caseload per public defender is meaningless in that these numbers do not establish that other public defenders do not have excess caseloads and in that prosecutions in rural counties operate differently than in urban counties like Jackson County; (2) caseload statistics for the Area 16 Public Defender Office in 2009 are meaningless in that cases are more complex now and in that the office was experiencing an excessive caseload in 2009; and (3) the caseload statistics from the Area 21 Public Defender Office are an inappropriate comparison in that 80 percent of the attorneys in the Area 21 Public Defender Office have been found to have excessive caseloads in a section 600.063 proceeding. The District Defender also argues that the Order's reliance on the circuit court's own records to determine Wiegert's and Stokely's respective caseloads was inaccurate because the Order excluded cases that that are in the early stages of the criminal process and not yet assigned to a trial division even though early examination of a case is crucial to providing effective assistance of counsel.

31

Viewed together, the District Defender's complaints with the Order can be summarized in a single sentence: If the Presiding Judge would have relied on different evidence presented at the conference, the Order would have reached a different conclusion. This argument ignores that, under *any* standard used for reviewing factual determinations made by the Presiding Judge (much less review for abuse of discretion), we defer to the Presiding Judge's assessment of the evidence when an issue is contested by the parties. *See, e.g.*, *Pearson v. Koster*, 367 S.W.3d 36, 43-44 (Mo. banc 2012) (discussing the standard of review applicable to challenges of trial court's factual determinations in court-tried civil cases). Section 600.063.3 necessarily contemplates that a presiding judge will evaluate the evidence presented during a conference to issue an order granting or denying relief requested in a district defender's motion, and that the presiding judge will thus find some evidence more persuasive than other evidence.

The Presiding Judge had before him longitudinal caseload statistics from the Area 16 Public Defender Office and from the entire Missouri State Public Defender Office, as well as testimony from public defenders, including Wiegert and Stokely about their respective caseloads and challenges posed therefrom. Based on that evidence, the Presiding Judge issued an order that found the caseload statistics more persuasive than testimony from Wiegert and Stokely. We will not conclude that the Presiding Judge abused his discretion in doing exactly what the statute contemplates, especially given the circumstances that gave rise to the District Defender filing the Amended Motion in October 2018.

Prior to the District Defender's filing of the Amended Motion, we reversed and remanded a previous order by the Judge Torrence denying relief on a motion concerning two other public defenders, O'Sullivan and Jobe. *See Petsch I*, 553 S.W.3d 404. While Judge Torrence reached out to the District Defender the day following the issuance of our mandate, the District Defender failed to take any action to set another conference notwithstanding its claimed continuing caseload issues until it filed the Amended Motion in October 2018.[21] The Amended Motion included affidavits of both Wiegert and Stokely in which they stated that their respective caseloads were so great that they were unable to meet their ethical obligations to their clients and to provide effective assistance of counsel, citing their inability to communicate with their clients on a regular basis, to work proactively on new cases, to conduct a proper investigation, and to avoid a current conflict of interest, and Wiegert and Stokely testified to the same at the conference. Both Wiegert and Stokely also admitted during the conference, however, that their respective caseloads concerns stemmed not from a sudden influx of cases assigned to them but instead of from our Supreme Court's disciplinary action *In re Hinkebein* a year prior to the Amended Motion being filed by the District Defender. The Presiding Judge was not under an obligation to accept the testimony of Wiegert and Stokely as true, and under the contrived circumstances leading up to the District Defender's filing of the Amended Motion and the

---

[21]The District Defender argues that laches or waiver is not applicable to the District Defender's ability to bring a section 600.063 motion to request a conference to discuss caseload issues. That issue is not before us on appeal, as the trial court simply acknowledged what preceded the District Defender's filing of the Amended Motion and Second Amended Motion, a factor relevant to determining what evidence presented during the conference to find credible.

33

Second Amended Motion, it was reasonable for caseload statistics to guide the Presiding

Judge's Order.  As such, Point One is denied.

## Conclusion

The Presiding Judge's Order is affirmed.


_____
Cynthia L. Martin, Judge

All concur

34