Lisa White Hardwick, Judge
Ruth Petsch, the District Defender of the Area 16 Public Defender Office, and the Area 16 Public Defender Office (collectively, "the District Defender") filed an application for review of the Presiding Judge's order denying her request for relief for caseload issues concerning two public defenders. On appeal, the District Defender contends the Presiding Judge erred by refusing to hold a hearing on the record; denying her request for relief in the form of wait lists and the appointment of private counsel; concluding that caseload issues did not render the two public defenders unable to provide effective assistance of counsel because such conclusion was against the weight of the evidence; and failing to declare that Section 600.063, RSMo 2016,[1] is subordinate to Rule 4 and is not the exclusive remedy for excessive caseloads for public defenders. Because the Presiding Judge's failure to hold the hearing on the record precludes us from conducting meaningful appellate review of his decision, we reverse and remand the case to the circuit court for further proceedings consistent with this opinion.
FACTUAL AND PROCEDURAL HISTORY
On November 1, 2017, the District Defender filed her first motion requesting a conference, pursuant to Section 600.063, to discuss caseload issues in her office with the Presiding Judge of the Jackson County Circuit Court.[2] Section 600.063 provides:
1. Upon approval by the director or the commission, any district defender may file a motion to request a conference to discuss caseload issues involving any individual public defender or defenders, but not the entire office, with the presiding judge of any circuit court served by the district office. The motion shall state the reasons why the individual public defender or public defenders *406 will be unable to provide effective assistance of counsel due to caseload concerns. When a motion to request a conference has been filed, the clerk of the court shall immediately provide a copy of the motion to the prosecuting or circuit attorney who serves the circuit court.
2. If the presiding judge approves the motion, a date for the conference shall be set within thirty days of the filing of the motion. The court shall provide notice of the conference date and time to the district defender and the prosecuting or circuit attorney.
3. Within thirty days of the conference, the presiding judge shall issue an order either granting or denying relief. If relief is granted, it shall be based upon a finding that the individual public defender or defenders will be unable to provide effective assistance of counsel due to caseload issues. The judge may order one or more of the following types of relief in any appropriate combination:
(1) Appoint private counsel to represent any eligible defendant pursuant to the provisions of section 600.064;
(2) Investigate the financial status of any defendant determined to be eligible for public defender representation under section 600.086 and make findings regarding the eligibility of such defendants;
(3) Determine, with the express concurrence of the prosecuting or circuit attorney, whether any cases can be disposed of without the imposition of a jail or prison sentence and allow such cases to proceed without the provision of counsel to the defendant;
(4) Modify the conditions of release ordered in any case in which the defendant is being represented by a public defender, including, but not limited to, reducing the amount of any bond required for release;
(5) Place cases on a waiting list for defender services, taking into account the seriousness of the case, the incarceration status of the defendant, and such other special circumstances as may be brought to the attention of the court by the prosecuting or circuit attorney, the district defender, or other interested parties; and
(6) Grant continuances.
4. Upon receiving the order, the prosecuting or circuit attorney and the district defender shall have ten days to file an application for review to the appropriate appellate court. Such appeal shall be expedited by the court in every manner practicable.
5. Nothing in this section shall deny any party the right to seek any relief authorized by law nor shall any provisions of this section be construed as providing a basis for a claim for post-conviction relief by a defendant.
6. The commission and the supreme court may make such rules and regulations to implement this section. Any rule or portion of a rule, as that term is defined in section 536.010, that is created by the commission under the authority delegated in this section shall become effective only if it complies with and is subject to all of the provisions of chapter 536 and, if applicable, section 536.028. This section and chapter 536 are nonseverable and if any of the powers vested with the general assembly pursuant to chapter 536 to review, to delay the effective date, or to disapprove and annul a rule are subsequently held unconstitutional, then the grant of rulemaking authority and any rule proposed or adopted after August 28, 2013, shall be invalid and void.
*407 In her motion, the District Defender requested that the conference be held under certain conditions, including that: (1) the prosecuting attorney be excluded from the conference; (2) the conference cover all of the attorneys in Area 16's office; (3) individual attorneys be permitted to decline to accept individual cases when they are violating or at risk of violating Rule 4 and the Sixth Amendment right to effective assistance of counsel; (4) the conference be held on the record; and (5) the conference be open to the public except when individual cases were discussed.
The Presiding Judge denied the District Defender's request for a conference. In his order, the Presiding Judge found that the District Defender's conditions were unlawful and explicitly prohibited by Section 600.063. The Presiding Judge stated that he was "deeply interested and available to promptly confer with the District Defender and Prosecutor to address the caseload issues which are claimed to exist and address possible remedies," but that the District Defender's motion was not filed in good faith and was not a legitimate motion under Section 600.063.
The following week, the District Defender filed a second motion requesting a conference to discuss caseload issues. In this motion, the District Defender omitted the conditions listed in the first motion. The District Defender did not, however, identify any individual public defenders whose caseloads would be discussed, as required by Section 600.063.1. Instead, the District Defender listed the individual cases that her office would not be able to accept.
The Presiding Judge denied the District Defender's second motion. In his order, the Presiding Judge found that the motion's allegation that "[t]he individual public defender or defenders to be discussed at the conference are unable to provide effective assistance of counsel due to excessive existing caseloads" was conclusory and did not satisfy Section 600.063.1's requirement that "[t]he motion shall state the reasons why the individual public defender or defenders will be unable to provide effective assistance of counsel due to caseload concerns." (Emphasis added.) Again, the Presiding Judge stated that he would not consider the motion a legitimate motion under Section 600.063.
One month later, on December 15, 2017, the District Defender filed a third motion requesting a conference to discuss caseload issues. In this motion, the District Defender identified two specific public defenders, Laura O'Sullivan and William Jobe, to be discussed at the conference. In an exhibit attached to the motion, the District Defender set out caseload statistics for all of the public defenders in her office, noting the number and types of cases assigned to them as well as the total estimated hours for each attorney's workload under the standards developed in 2014 by the consulting firm RubinBrown.[3] The District Defender also attached as exhibits affidavits from O'Sullivan and Jobe in which they described their caseloads and explained, in detail, the specific reasons why they believed they were unable to meet their ethical obligations to their clients, including their concerns pertaining to communication, diligence, investigation, and competence.
In her motion, the District Defender requested that the Presiding Judge schedule a conference; find that O'Sullivan and Jobe are unable to provide effective assistance *408 of counsel due to caseload issues; place cases on a waiting list for defender services; appoint private counsel to represent eligible defendants; and declare Sections 600.062[4] and 600.063"unconstitutional insofar as they are construed to require public defenders to accept cases for which they lack the time and resources to provide effective assistance of counsel and to risk professional sanctions because of such compelled representation."
The Presiding Judge held a conference on January 10, 2018. Present at the conference were the District Defender and her attorneys, the Chief Deputy Prosecutor of the Jackson County Prosecuting Attorney's Office ("the Prosecuting Attorney"), the Presiding Judge, the previous Presiding Judge, and the Presiding Judge-Elect. The Presiding Judge denied the District Defender's request that the conference be on the record on the basis that Section 600.063 makes no provision for an evidentiary hearing.
After the conference, the Presiding Judge entered an order denying relief. In his order, the Presiding Judge found that the District Defender did not sufficiently demonstrate the two public defenders' inability to provide effective assistance of counsel and did not address whether "inefficient policies recently implemented by the [District Defender] have themselves contributed to the size of these large caseloads." Specifically, the Presiding Judge noted that the District Defender's implementation of vertical representation,[5] her "decision to abandon the early disposition docket," and her decision to assign many public defenders to juvenile cases, instead of just one public defender as had been done in the past, "led to increased inefficiency in the use of lawyer time."
The Presiding Judge rejected the RubinBrown workload standards, stating that he was skeptical about the validity of the data. The Presiding Judge believed that "[t]he assigned hours per case type and the other conclusions in these studies simply do not comport with the customs and practice observed by this Court in recent years." In the Presiding Judge's opinion, "these numbers [in the RubinBrown workload standards] do not represent average amounts of time."
The Presiding Judge then noted the growth in the Jackson County Public Defender's Office since he worked there as a public defender from 1982 to 1988. The Presiding Judge said that, at that time, there were 11 or 12 trial lawyers and one or two appellate lawyers because they handled their own appeals. The Presiding Judge found that, for several years, there have been approximately 35 lawyers in the Jackson County Public Defender's Office, and they do not do any appellate work. The Presiding Judge further found that, while caseloads have increased due to "the increase in drug cases, domestic violence cases and other lesser felonies, the core caseloads of serious A and B felonies have not changed significantly over the last 35 years." The Presiding Judge noted that *409 the Jackson County Public Defender's Office is still the largest public defender's office in Missouri. The Presiding Judge concluded that the large caseloads in the District Defender's office "have primarily resulted from the creation of bad policies that have been self-inflicted coupled with lack of effective training and mentoring of new, young lawyers."
Although the Presiding Judge found that O'Sullivan and Jobe were not entitled to any relief because the District Defender did not meet the threshold issue of proving that they were unable to provide effective assistance of counsel due to caseload issues, he went on to address why the specific relief requested by the District Defender was unsuitable. The Presiding Judge found that a wait list "makes no sense as it does nothing to reduce the caseload" but "just puts cases in a different column." The Presiding Judge rejected the idea of appointing private counsel to represent defendants in criminal cases on the basis that "[t]he law has been clear for decades that courts have no authority to involuntarily appoint private counsel to represent criminal defendants." Lastly, the Presiding Judge rejected the District Defender's request to find Sections 600.062 and 600.063 unconstitutional, finding the District Defender's argument "not persuasive" and finding no basis under state or federal law to declare either statute to be unconstitutional. The District Defender filed an application for review in this court pursuant to Section 600.063.4.
ANALYSIS
In Point I, the District Defender contends the Presiding Judge erred in refusing her request for a hearing on the record on the basis that Section 600.063 makes no provision for an evidentiary hearing. She asserts that, without evidence, the statutory right to an appeal in Section 600.063 is meaningless because there is an inadequate record for the appellate court to review. In response, the Prosecuting Attorney argues that the District Defender's motion was insufficient to entitle her to a conference under Section 600.063, so there is no need to address whether the conference should have been held on the record.
Whether the District Defender's motion was sufficient to entitle her to a conference under Section 600.063 and whether such conference should be held on the record are issues of statutory interpretation and application. As such, they are issues of law, which this court reviews de novo. Dennis v. Riezman Berger, P.C., 529 S.W.3d 318, 320 (Mo. banc 2017). "This Court's primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain language of the statute at issue." Id. (citation omitted).
Looking first at whether District Defender's motion was sufficient to entitle her to a conference, Section 600.063.1 requires that the District Defender obtain the director's or the commission's approval to file a motion to request a conference. The statute further requires that the request be to discuss caseload issues "involving any individual public defender or defenders, but not the entire office." § 600.063.1. Lastly, Section 600.063.1 requires that the motion "state the reasons why the individual public defender or public defenders will be unable to provide effective assistance of counsel due to caseload concerns."
There is no dispute that the District Defender alleged in her third motion that she had the approval of the State Public Defender Director to file the motion. The District Defender further alleged that she was filing the motion on behalf of O'Sullivan and Jobe, two public defenders in her office. After describing O'Sullivan and *410 Jobe's experience and the number and types of cases on their current caseloads, the District Defender then set out the reasons why each attorney was unable to provide effective representation to their clients. To support these allegations, the District Defender attached affidavits from O'Sullivan and Jobe in which they described in further detail their concerns about, among other things, communication, diligence, competence, and investigation, all of which they believed rendered them unable to be provide effective representation to their clients. The District Defender's allegations in her motion and the supporting affidavits of O'Sullivan and Jobe satisfied Section 600.063.1's requirement that the motion state the reasons why the individual public defenders "will be unable to provide effective assistance of counsel due to caseload concerns."
The Prosecuting Attorney argues that, rather than seeking a conference to discuss caseload issues involving merely O'Sullivan and Jobe, the District Defender was actually seeking a conference to discuss issues involving the entire office, which Section 600.063.1 expressly prohibits. It is true that the District Defender stated in the introduction of her third motion that she was filing the motion on behalf of O'Sullivan and Jobe "as exemplars of the individual public defenders in the Area 16 Trial Office, each of whom has an excessive case load." It is also true that the District Defender explained that she was unable to deal with O'Sullivan's and Jobe's excessive caseloads by merely reassigning them to other public defenders because the other 33 public defenders in her office were in "substantially the same quandary" that O'Sullivan and Jobe were.[6] However, the District Defender then stated that, to the extent that Section 600.063.1's prohibition against a conference to discuss caseload issues of the entire office prevented her from making the request on behalf of each public defender in her office, she was seeking relief based on the caseload issues of only O'Sullivan and Jobe. Indeed, the remainder of the District Defender's motion indicated that she was seeking a conference to discuss only the caseload issues of O'Sullivan and Jobe, as those were the only two public defenders for whom she provided specific reasons as to why they were unable to provide effective assistance of counsel due to caseload issues.
Nevertheless, the Prosecuting Attorney insists that the District Defender's third motion was insufficient because we should interpret Section 600.063.1's prohibition against complaints about the entire office's caseload as requiring that the District Defender's motion allege "1) there are unique circumstances facing a subset of attorneys in the office creating an excessive caseload for these attorneys; and 2) those unique circumstances preclude other attorneys in that office from stepping in to handle part of the excessive caseload." Because the District Defender's third motion did not include any allegations of this nature, the Prosecuting Attorney argues that she was not entitled to a conference. We disagree.
The plain language of Section 600.063.1 did not require that the District Defender allege any "unique circumstances" facing O'Sullivan and Jobe. The plain language of the statute required only that she indicate the director's or commission's approval to file the motion, identify the individual public defenders whose caseloads would be discussed, and set out the reasons why *411 those public defenders were unable to provide effective assistance of counsel. The District Defender's third motion satisfied the requirements of Section 600.063.1 as set forth in the statute's plain language. Therefore, the Presiding Judge properly granted the District Defender's request for a conference.
The Prosecuting Attorney concedes that, if we find, as we have, that the District Defender's third motion was sufficient to entitle her to a conference under Section 600.063, the conference should have been held on the record. We agree. While Section 600.063 does not expressly provide for the conference to be on the record, Section 600.063.4 states that, upon receiving the Presiding Judge's order, the prosecutor or the district defender "shall have ten days to file an application for review to the appropriate appellate court."
To conduct any kind of meaningful appellate review of the Presiding Judge's order, we must have an adequate record. See Glover v. Saint Louis Cty. Circuit Court , 157 S.W.3d 329, 330-31 (Mo.App.E.D. 2005). The District Defender challenges the sufficiency of the evidence to support the Presiding Judge's conclusions that O'Sullivan and Jobe failed to demonstrate an inability to provide effective assistance of counsel based upon caseload issues. Although the Presiding Judge stated in his order that he drew this conclusion from "the information provided with the Motion," most of his findings referred to the effects of the District Defender's policies and procedures-none of which were contained in "the information provided with the Motion." Without a record, we are unable to determine what evidence was before the Presiding Judge during the conference and whether that evidence was sufficient to support his order. See id. at 331. Without a record, it is simply impossible for this court to review the propriety of the Presiding Judge's decision. See id. "When, as here, the record on appeal is inadequate through no fault of the parties, the appropriate remedy is to reverse the judgment and remand the case for a new hearing." Oyler v. Dir. of Revenue , 10 S.W.3d 226, 228 (Mo.App.W.D. 2000). Point I is granted.
CONCLUSION
The Presiding Judge's order is reversed, and the cause is remanded to the circuit court for further proceedings consistent with this opinion.[7]
All Concur.

All statutory references are to the Revised Statutes of Missouri 2016.

The Jackson County Circuit Court is the 16th Judicial Circuit of Missouri.

RubinBrown, The Missouri Project: A Study of the Missouri Public Defender System and Attorney Workload Standards , AmericanBar.org , https://www.americanbar.org/content/dam/aba/events/legal_aid_indigent_defendants/2014/ls_sclaid_5c_the_missouri_project_report.authcheckdam.pdf (last visited June 19, 2018).

Section 600.062 provides:
Notwithstanding the provisions of sections 600.017 and 600.042 to the contrary, neither the director nor the commission shall have the authority to limit the availability of a district office or any division director, district defender, deputy district defender, or assistant public defender to accept cases based on a determination that the office has exceeded a caseload standard. The director, commission, any division director, district defender, deputy district defender, or assistant public defender may not refuse to provide representation required under this chapter without prior approval from a court of competent jurisdiction.

In a system of vertical representation, a defendant has the same public defender at every stage of the proceedings.

This was entirely appropriate. In a multi-lawyer office like the Area 16 Public Defender Office, some discussion in the motion of the workloads of the other attorneys in the office is necessary to address why the identified attorneys' cases cannot simply be reassigned.

Because we are reversing and remanding the case for further proceedings, we need not address the District Defender's four remaining points on appeal.