

# IN THE MISSOURI COURT OF APPEALS
## WESTERN DISTRICT

| | | |
|---|---|---|
| IN RE: | ) | |
| | ) | |
| AREA 5 PUBLIC DEFENDER OFFICE, | ) | |
| | ) | |
| Appellant, | ) | |
| v. | ) | WD83535 |
| | ) | |
| | ) | OPINION FILED: |
| THE HONORABLE DANIEL F. | ) | October 6, 2020 |
| KELLOGG, PRESIDING JUDGE OF | ) | |
| THE CIRCUIT COURT OF BUCHANAN | ) | |
| COUNTY, MISSOURI, | ) | |
| | ) | |
| Respondent. | ) | |

**Appeal from the Circuit Court of Buchanan County, Missouri**
**The Honorable Daniel F. Kellogg, Judge**

**Before Division One:** Mark D. Pfeiffer, Presiding Judge, and
Edward R. Ardini, Jr., and Thomas N. Chapman, Judges

The Area 5 Public Defender Office ("PD Office"), located in St. Joseph, Missouri, appeals from the judgment entered by the Honorable Daniel F. Kellogg, presiding judge of the Circuit Court of Buchanan County, Missouri ("circuit court"), denying the PD Office's request for relief for individual attorneys in the office from excessive caseloads relating to criminal nonsupport cases, after a section 600.063[1] caseload conference on the record in response to the PD Office's motion requesting such a conference to discuss caseload issues.

---

[1] All statutory references are to the REVISED STATUTES OF MISSOURI 2016, as supplemented.

This case presents a statutory question of first impression: Whether section 600.063.1 prohibits a district defender[2] from discussing and seeking relief from excessive caseloads for all the individual attorneys in a public defender office and prohibits the circuit court from discussing and granting relief to all the individual attorneys.

**Factual and Procedural History**

On November 18, 2019, the District Defender managing the PD Office filed a motion pursuant to section 600.063 requesting a conference to discuss caseload issues. The District Defender alleged that:

> Due to excessive caseloads, the individual attorneys of the Area 5 Public Defender Office are violating or at risk of violating Missouri Supreme Court Rules 4-1.1 (competence), 4-1.3 (diligence), 4-1.4 (communication), and 4-1.7 (conflict of interest), as well as the Sixth Amendment right to effective assistance of counsel, if they continue to accept additional cases.

She further alleged that although section 600.063 precludes discussion of the "entire office," "a conference is necessary . . . because none of the available attorneys in her office are able to accept additional cases at this time," and she "would not need to have a conference with the Court if only some individual attorneys in her office were unable to accept additional cases; she could simply reassign cases within the office to other attorneys who were able to accept the cases."

The circuit court held a caseload conference on the record on January 7, 2020, at which appearances were entered by the District Defender of PD Office, the Public Defender Division Director,[3] and the Youth Alliance P.O.W.E.R. Project Manager.[4]

---

[2] A "district defender" is defined as "the managing attorney in charge of a public defender district office." § 600.011(8).

[3] A "division director" is defined as "an employee responsible for the supervision and management of multiple district offices or areas of statewide responsibility as assigned by the director, or both." § 600.011(9).

[4] The circuit court noted on the record at the hearing that "Notice had been given to all parties, or to the statutorily designated parties. The county prosecutor is ill and not even in the office today, but notice was given to them about this." And, though the only issue presented on appeal is a legal question of statutory interpretation, the county prosecutor has chosen not to participate in the appeal and, instead, notified this Court by letter that his office

The District Defender stated that due to the excessive caseloads of the individual attorneys in her office, they could not meet with clients in a timely fashion within seven days, visit clients in jail, watch all the hours of dash-cam video before pleading or trial, obtain and review mental health records, obtain and review school records and criminal history, read the sentencing assessment reports, and adequately prepare before appearing at sentencing.

The District Defender submitted the following exhibits to the circuit court for consideration: 1 Individual Attorneys Caseload; 2 RubinBrown Report (Missouri Project);[5] 3 Chief Disciplinary Counsel's brief in public defender attorney disciplinary case; 4 Supreme Court Order of Discipline; 5 Transcript from Supreme Court public defender attorney discipline case; 6 *Waters* case; 7 Pie Chart Since Waitlists Implemented; 8 Pie Chart Prior to Waitlists Implemented; 9 Nonsupport Court Cases; 10 Pending Waitlist; 11 Accepted Waitlist Cases; 12 Waitlist Cases Removed from Waitlist Without Public Defender Representation as of January 2, 2020; 13 Pending Waitlist Average; 14 Missouri State Public Defender Cumulative Caseload Metrics; 15 ABA Opinion 06-411 regarding Ethical Obligations of Lawyers Who Represent Indigent Criminal Defendants When Excessive Caseloads Interfere With Competent

---

"never received any notice of the original hearing on the case . . . ." We note that section 600.063.1 directs the clerk of the court to provide a copy of the District Defender's excessive caseload motion to the county prosecutor and section 600.063.2 directs the circuit court to provide notice of the excessive caseload hearing to the county prosecutor. Here, our uncontested record on appeal reflects the circuit court's confirmation that such notice was provided to the county prosecutor. Irrespective, the county prosecutor has suffered no prejudice from not participating in the hearing below or the present appeal as our ruling today orders a remand to the circuit court for the purpose of conducting a hearing and making factual findings on the excessive caseload claims of the District Defender. Hence, we presume all statutorily required notice by the circuit court will be provided to the county prosecutor of any such hearing upon remand.

[5] Exhibit 2, RubinBrown LLP (on behalf of the American Bar Association), *The Missouri Project: A Study of the Missouri Public Defender System and Attorney Workload Standards*, June 2014. "RubinBrown LLP is the accounting and professional consulting firm that completed the study that resulted in workload standards for the Missouri State Public Defender System. RubinBrown LLP's time study resulted in workload standards that reflected the average amount of time an attorney could expect to spend on a particular type of case in order to provide reasonably competent assistance of counsel." *In re Area 16 Pub. Def. Off. III*, WD 82962, 2020 WL 3067596, at *2 n.7 (Mo. App. W.D. June 9, 2020).

and Diligent Representation; 16 ABA Eight Guidelines of Public Defense Related to Excessive Workloads; and, 17 Proposed Order.

Exhibit 1 was the twelve-month assigned caseload of each of the seven attorneys in the PD Office from December 16, 2018, to December 16, 2019, with five of the seven attorneys having been assigned more than 200 new cases. One attorney had been assigned fewer cases (126) only because she transferred to the PD Office in September 2019; and the District Defender, who also had supervisory duties, was assigned 105 new cases. There was evidence that all of the individual attorneys, including the District Defender, exceeded the Public Defender's maximum caseload standard. The District Defender stated that the PD Office "just need[ed] to slow down the influx [of criminal nonsupport cases] so we can manage our caseload better. And that led us to starting an informal waitlist." The informal waitlist had 22 noncustodial defendants on it, with an average wait time of 45 days.

The solution proposed by the District Defender was for the circuit court to authorize the PD Office to implement a waitlist of noncustodial indigent defendants charged with criminal nonsupport and/or criminal nonsupport violations, with public defenders accepting defendants from the waitlist as clients when the individual attorneys' workloads permitted, with in-custody defendants prioritized.

The presiding judge asked what had changed. The District Defender stated that since 2014, the PD Office had been reduced from eight to seven attorneys. Also a public defender attorney had been disciplined by the Missouri Supreme Court for not meeting his ethical obligations, which was a "game changer" according to the Division Director because now "it's clear that caseload is not a defense, it's a violation of the ethical rule. . . . So now we have to come to the Court and let you know there's just too many cases."

4

The presiding judge expressed concern that the statute "is supposed to be for individual attorneys. So I don't know that you can ask for the whole office, at least not according to the statute. What's your response on that?" The Division Director responded that the District Defender "couldn't come here and simply say, Judge, the entire office wants to turn down cases because when you look at the office capacity as a whole it's over 100 percent. But I do have seven individual attorneys who do need, you know, to turn down cases because each individual attorney . . . is overloaded. And when it says 'but not the entire office,' I don't think the statute means, well, you can't include every individual attorney. It means you can't include the office as the office." The District Defender agreed, stating: "[W]hat I think the statute means is that you can't arbitrarily argue the office can't take any more cases without showing that each attorney is overloaded. And we've shown that each attorney is overloaded in Exhibit 1."

On January 21, 2020, the circuit court issued a judgment denying relief. The circuit court made no findings of fact; instead, it concluded as a matter of law that "contrary to the provisions of [section 600.063], Movant [PD Office] seeks relief for all attorneys in the office. This is clearly precluded by the mandate of the statute, which limits the discussion to 'any individual public defender or defenders, *but not the entire office*. As this Motion seeks relief which is barred by the statute, the Court must deny the Motion." The PD Office timely appealed.

## Standard of Review[6]

"Statutory interpretation is a question of law and is subject to *de novo* review." *Henry v. Piatchek*, 578 S.W.3d 374, 378 (Mo. banc 2019) (internal quotation marks omitted). "This Court's

---

[6] "[A] presiding judge's decision to grant or deny relief requested by a district defender pursuant to section 600.063 is subject to review for abuse of discretion." *In re Area 16 Pub. Def. Off. III*, 2020 WL 3067596, at *8. "Judicial discretion is abused when a trial court's ruling 'is clearly against the logic of the circumstances then before the court and is so arbitrary and unreasonable as to shock the sense of justice and indicate a lack of careful consideration.'" *Id.* (quoting *Fleshner v. Pepose Vision Inst., P.C.*, 304 S.W.3d 81, 87 (Mo. banc 2010)). "It is . . . a

primary rule of statutory interpretation is to give effect to legislative intent as reflected in the plain

language of the statute at issue." *Karney v. Dep't of Labor & Indus. Rels.*, 599 S.W.3d 157, 162

(Mo. banc 2020) (internal quotation marks omitted). Accordingly:

> We will look beyond the plain meaning of the statute only when the language is
> ambiguous or would lead to an absurd or illogical result.
>
> A statute is ambiguous when its plain language does not answer the current dispute
> as to its meaning. Ambiguities in statutes are resolved by determining the intent of
> the legislature and by giving effect to its intent if possible. When determining the
> legislative intent of a statute, no portion of the statute is read in isolation, but rather
> the portions are read in context to harmonize all of the statute's provisions. Rules
> of statutory construction are used to resolve any ambiguities if the legislative intent
> is undeterminable from the plain meaning of the statutory language.

*Truman Med. Ctr., Inc. v. Progressive Cas. Ins. Co.*, 597 S.W.3d 362, 367 (Mo. App. W.D. 2020)

(quoting *Truman Med. Ctr., Inc. v. Am. Standard Ins. Co.*, 508 S.W.3d 122, 124-25 (Mo. App.

W.D. 2017)).

## Analysis

In 2008, pursuant to its rulemaking authority under section 600.017(10), the Missouri

Public Defender Commission promulgated an administrative rule, 18 CSR 10-4.010, adopting a

"caseload protocol" that permitted a district defender office to decline additional appointments:

> in response to mounting concern that, due to the growth in the number and
> complexity of cases requiring public defender services without a corresponding
> increase in the number of public defenders, some public defenders' caseloads had
> increased to a level that interfered with their ability to fulfill their constitutional,
> statutory and ethical obligations to represent their clients effectively and
> competently.

---

principle deep within our law that on appeal from a trial court's discretionary ruling it is presumed that the ruling is correct, and that the burden of showing abuse of that discretion is on the appellant." *Id.* (internal quotation marks omitted). However, here, the circuit court made no factual findings as to whether caseload relief was or was not justified. Instead, it concluded as a matter of law that the motion sought relief that was barred by section 600.063; thus, our review of the circuit court's statutory interpretation is *de novo*.

*State ex rel. Mo. Pub. Def. Comm'n v. Waters*, 370 S.W.3d 592, 599 (Mo. banc 2012). As an integral part of the rule, the Commission was required to "maintain a caseload standards protocol identifying the maximum caseload *each district office* can be assigned without compromising effective representation." *Id.* (quoting 18 CSR 10-4.010(1)(A)) (emphasis added). When a district office exceeded the maximum caseload standard for three consecutive calendar months, the director had the discretion to "limit the office's availability to accept additional cases by filing a certification of limited availability" with the appropriate court. *Id.* (quoting 18 CSR 10-4.010(2)(A)). The protocol permitted an office placed on limited availability to decline appointments in a given month once it reached its maximum allowable caseload. *Id.* In *Waters*, the Missouri Supreme Court held that "the trial court exceeded its authority by appointing the public defender's office to represent a defendant in contravention of 18 CSR 10-4.010." *Id.* at 612. The trial court erred by "ordering the public defender to disobey" the regulation in the absence of any finding the regulation was invalid. *Id.*

In reaction to *Waters*, in 2013 the General Assembly passed H.B. No. 215, § A, which provided that:

> Notwithstanding the provisions of sections 600.017 and 600.042 to the contrary, neither the director nor the commission shall have the authority to limit the availability of a district office or any division director, district defender, deputy district defender, or assistant public defender to accept cases *based on a determination that the office has exceeded a caseload standard.* The director, commission, any division director, district defender, deputy district defender, or assistant public defender may not refuse to provide representation required under this chapter without prior approval from a court of competent jurisdiction.

§ 600.062 (effective July 2, 2013) (emphasis added). H.B. No. 215, § A, also provided that a District Defender may seek a conference with the presiding judge of a circuit regarding the caseloads of individual public defender attorneys:

7

Upon approval by the director or the commission, any district defender may file a motion to request a conference to discuss caseload issues involving *any individual public defender or defenders, but not the entire office*, with the presiding judge of any circuit court served by the district office. The motion shall state the reasons why *the individual public defender or public defenders* will be unable to provide effective assistance of counsel due to caseload concerns.

§ 600.063.1 (effective Aug. 28, 2013) (emphasis added). The presiding judge must grant or deny relief within 30 days of the conference. If relief is granted, "based upon a finding that *the individual public defender or defenders* will be unable to provide effective assistance of counsel due to caseload issues," the presiding judge has the discretion to order one or more of the following types of relief in any appropriate combination to address the problem: appointment of private counsel, continuances, bond reductions, disposition of cases without jail time (with the express concurrence of the prosecutor), or further review of defendants' indigency status. § 600.063.3 (emphasis added).

"[S]ection 600.063 addresses a presiding judge's power to consider a district defender's motion to determine whether *a particular public defender* is unable to provide effective assistance of counsel because of caseload concerns . . . ." *In re Area 16 Pub. Def. Off. III*, WD 82962, 2020 WL 3067596, at *7 (Mo. App. W.D. June 9, 2020) (emphasis added). This court has observed that:

The conference permitted by section 600.063 is a mechanism to permit a presiding judge, a district defender, and a prosecutor to meet and to discuss information that could assist the presiding judge in deciding whether *specifically identified public defenders* are experiencing excessive caseloads that prevent them from providing effective assistance of counsel, and if so, in determining the relief appropriate to address the situation.

*Id.* at *9 (emphasis added). "When the General Assembly enacted section 600.063 in 2013, it provided that relief would only be appropriate if the . . . presiding judge found that an 'individual public defender or public defenders will be unable to provide effective assistance of counsel due

8

to caseload issues.'" *Id.* at *11 (quoting § 600.063.3). "'The [General Assembly's] careful selection of words is presumed meaningful.'" *Id*. (quoting *Brentwood Glass Co. v. Pal's Glass Serv., Inc*., 499 S.W.3d 296, 304 (Mo. banc 2016)). Section 600.063.3 thus limits the issue before the presiding judge during the conference to whether the evidence established that the identified individual public defenders could not provide effective assistance of counsel to their clients due to their respective caseloads. *Id.*

When section 600.063 is read in context with section 600.062, the plain language of the statute reflects that the legislature intended to change the metric by which the circuit court is to determine whether relief should be granted due to excessive caseloads. The plain language of section 600.063.1 permits the District Defender to discuss with and seek relief from the circuit court for excessive caseloads using the metric of whether "*the individual public defender or defenders* will be unable to provide effective assistance of counsel due to caseload issues." § 600.063.3. The import of the statute is to change the caseload calculation metric from office-based to individual-based. "The plain language of the statute [600.063.1] required only that [the District Defender] indicate the director's or commission's approval to file the motion, identify the individual public defenders whose caseloads would be discussed, and set out the reasons why those public defenders were unable to provide effective assistance of counsel." *Petsch v. Jackson Cty. Prosecuting Att'ys Off.*, 553 S.W.3d 404, 410-11 (Mo. App. W.D. 2018).[7] As long as a district defender requests the circuit court to consider whether *specifically identified public defenders* are

---

[7] In *Petsch*, the District Defender asserted that two of the 33 attorneys in her office had excessive caseloads. The Prosecuting Attorney argued that, rather than seeking a conference to discuss caseload issues involving merely two attorneys, the District Defender was actually seeking a conference to discuss issues involving the entire office, which section 600.063.1 expressly prohibited. We noted: "In a multi-lawyer office like the Area 16 Public Defender Office, some discussion in the motion of the workloads of the other attorneys in the office is necessary to address why the identified attorneys' cases cannot simply be reassigned." *Petsch v. Jackson Cty. Prosecuting Att'ys Off.*, 553 S.W.3d 404, 410 (Mo. App. W.D. 2018).

9

experiencing excessive caseloads rather than whether *the public defender office* has exceeded a caseload standard, the statute is not violated.

Section 600.063.1 permits the discussion of the caseload issues of "*any individual public defender or defenders*" without limitation as to number. If the legislature had intended to limit the number of individual attorneys in a public defender office for which the District Defender may seek caseload relief to one or more but not all, it would have included express language to that effect. *See Peoples v. Med. Protective Co.*, 584 S.W.3d 339, 345 (Mo. App. W.D. 2019) (citing *City of Webster Groves v. Smith*, 102 S.W.2d 618, 620 (Mo. 1937)).

This reading of the statute is not only supported by the plain and ordinary meaning of the words used, but is also logical. The legislature has created an expedited procedure with the presiding judge sitting in his administrative capacity to conduct a nonadversarial review of how criminal cases involving the attorneys in the public defender's office will be administered. It would be illogical and a waste of judicial resources to require the District Defender to bring individual attorney caseload issues before the presiding judge in a piecemeal fashion in the event that each public defender in the office was then experiencing an excessive caseload.

The point on appeal is, thus, granted and we remand for further proceedings; specifically, the circuit court is directed to make factual findings as to each of the individual attorneys who have been presented to the circuit court as having excessive caseloads as contemplated by section 600.063.

## Conclusion

The circuit court's judgment denying caseload relief as a matter of law is reversed, and the cause is remanded for the circuit court to conduct proceedings consistent with our ruling today, including conducting a hearing and to make findings of fact as to the claims of the individual

10

attorneys asserting that their caseloads are statutorily excessive as contemplated by section 600.063.

/s/ *Mark D. Pfeiffer*
Mark D. Pfeiffer, Presiding Judge

Edward R. Ardini, Jr., and Thomas N. Chapman, Judges, concur.

11